IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| KEVIN WARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10-3398-CV-S-ODS |
| ) | |
| BRADLEY SMITH, et al., ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION GRANTING DEFENDANT
## TIFFANY BREEDEN'S MOTION FOR SUMMARY JUDGMENT

Pending is Defendant Tiffany Breeden's Motion for Summary Judgment (Doc. # 62). The Motion is granted.

### I. BACKGROUND[1]

Inmate Kevin Ward ("Ward") brought this action under 42 U.S.C. § 1983, against two correctional officers and a nurse at South Central Correctional Center in Licking, Missouri. He alleges the officers used excessive force by spraying him with pepper spray, and that Defendant Nurse Tiffany Breeden ("Breeden") was deliberately indifferent to his medical needs.[2]

On October 26, 2009, correctional officers conducted a "use of force" on Ward by spraying him with pepper spray. After the "use of force," Nurse Breeden medically assessed Ward. Medical Record (Doc. # 62-1), page EM-0121. Breeden asked Ward about his condition, breathing, injuries, and other complaints or issues. Breeden Declaration ("Breeden Dec.") (Doc. # 62-2), ¶ 11, 26. In Ward's medical records, Breeden noted that Ward said he had a cut on his arm, and he complained of burning

---

[1] The Court has reviewed the record. The following facts are either uncontroverted or controverted but construed in Ward's favor.

[2] The excessive force claims will be addressed in a separate Order.

eyes and difficulty breathing. Medical Record, page EM-0122. The medical records noted there was an "alteration in skin integrity" and a "potential alteration in respiratory status." Medical Record, page EM-0123. Ward denied any history of medical problems and the records completed by Breeden did not indicate that Ward had a history of asthma. Medical Record, page EM-0121 and EM-0123. Breeden told Ward that his medical history records did not indicate that Ward as asthmatic. Ward Declaration ("Ward Dec.") (Doc. # 76-1), ¶ 31. However, Ward contends he had a history of asthma and informed Breeden about it. Ward Deposition ("Ward Dep.") (Doc. # 62-3), 46:2-3.

Upon examination, Breeden determined Ward had a superficial laceration on his arm that was not actively bleeding. Medical Record, page EM-0122; Breeden Dec. ¶ 17. She applied a solution and bandage onto the laceration on Ward's arm. Use of Force Video (Doc. # 152). She instructed Ward to clean the laceration with soap and water and allow it to "scab over." Breeden Dec., ¶ 18. Breeden also checked Ward's visual acuity and assessed his breathing. Medical Record, page EM-0122; Breeden Dec., ¶ 17. She checked his oxygen level with a pulse oximeter, which showed normal results. Breeden Dec., ¶ 12-13; Medical Record, page EM-0123. Breeden testified that she instructed Ward to wash the pepper agent off his skin, mucus membranes, eyes and mouth with copious amounts of water. Breeden Dec., ¶ 19. The medical record completed by Breeden contemporaneously with the incident also noted these instructions. Medical Record, page EM-0123. Ward contends that Breeden did not instruct him to flush his eyes with water. Ward Dep. 50:12-14. Breeden testified she believed Ward had the usual and full access to water in his cell, and Ward does not controvert this fact. Breeden Dec., ¶ 21. Breeden instructed Ward about the signs of infection, and told him to call medical personnel immediately with any problems. *Id.*, ¶ 31. Ward verbalized his understanding of these instructions. Medical Record, page EM-0123; Breeden Dec., ¶ 28. Breeden recorded "refer to physician" on Ward's medical records. Medical Record, page EM-0123. Ward contends that due to Breeden's failure to irrigate the pepper spray from his body, the hairs on his legs have not grown back. Ward Dec., ¶ 52.

2

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985).

## III. DISCUSSION

Ward argues that Breeden was deliberately indifferent to his serious medical needs by not washing the pepper agent off his body, refusing to care for two lacerations to his arm, and disregarding his claim that he had a history of asthma. Breeden moves for summary judgment contending that Ward failed to establish that she was deliberately indifferent to any serious medical or mental health need or that Ward sustained any detrimental effect or injury as a result of Breeden's care.[3] Breeden's Motion is granted.

The Eighth Amendment's protection against cruel and unusual punishment requires prison officials to provide inmates with medical care. *Plemmons v. Roberts*, 439 F.3d 818, 823 (8th Cir. 2006). To succeed on his claim, Plaintiff must allege and

---

[3] Breeden also argues that summary judgment should be granted because Ward failed to exhaust his administrative remedies. In light of the Court's ruling, there is no need to address this alternative ground.

prove, by a preponderance of the evidence, a "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To support his section 1983 claim, Plaintiff must show (1) he suffered objectively serious medical needs; and (2) Defendants subjectively knew of but deliberately disregarded those needs. *Id.* (quotations omitted). The Eighth Circuit has defined a serious medical needs a "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). To be deliberately indifferent, "a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hartsfield*, 491 F.3d at 397. A mere difference in opinion between plaintiff and his treating medical personnel about what treatment is appropriate does not give rise to a colorable claim under section 1983. *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991). Further, disagreement with a diagnosis or course of medical treatment is insufficient to state a claim. *Davis v. Hall*, 922 F.2d 151, 153 (8th Cir. 1993).

Assuming that being covered with pepper spray and having a cut arm constitutes a serious medical need, Ward's claim fails because there are no facts for a jury to conclude that Breeden was deliberately indifferent to that need. It is undisputed that Breeden examined Ward after the "use of force" incident. Ward had a small laceration on his arm, which was not actively bleeding when Breeden examined Ward. Breeden applied a solution and bandage to the laceration, instructed Ward about the signs of infection, and told him to notify medical personnel if he had any problems. Thus, Breeden was not deliberately indifferent to this need, and Ward's contention that she should have done more is only a disagreement over treatment that will not support a constitutional claim. Further, Ward contends he had a history of asthma, although the medical records available to Breeden indicated that he did not have such history. Breeden checked Ward's oxygen level with a pulse oximeter, which showed that Ward's oxygen level was within normal limits. Even if Ward had asthma, and even if Breeden knew he had asthma, there is no indication that she should have done anything more than confirm that Ward was breathing properly and his oxygen level was normal.

Finally, Ward is unable to present any facts or evidence to support his claim that

4

Breeden's nursing decision not to personally wash the pepper agent off his body was in any way improper. Ward denies that Breeden instructed him how to remove the pepper spray from his body. However, Breeden testified that she instructed him about this, which is also supported by Ward's medical records. Further, at his deposition, Ward testified that prison officials are instructed not to wash the mace out of inmates' eyes or face. Ward Dep., 49:21-23. Instead, he testified, "[t]hey are instructed to allow you to go back to your cell and wash it off yourself." *Id.*, 49:23-25. This demonstrates Ward's knowledge as to what he was supposed to do. Further, the evidence shows that Ward acted on this knowledge, as he testified that he used the water that was available to him to wash the pepper spray off his genitals. Ward Dep. 53:5-7. Ward's belief that Breeden should have personally washed him is another disagreement over treatment. To the extent Ward's claim rests on the officers depriving him of water, there is no evidence in the record that Breeden was responsible for the water access that Ward had in his cell.

The Court concludes that Ward has failed to establish that Breeden was deliberately indifferent to any alleged serious medical need, or that Ward suffered any detrimental effect or injury as a result of Breeden's care.

## IV. CONCLUSION

Breeden's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

DATE: March 31, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT