IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

KEVIN WARD,                          )
                                     )
        Plaintiff,                   )
                                     )
vs.                                  )     Case No. 10-3398-CV-S-ODS
                                     )
BRADLEY SMITH, et al.,               )
                                     )
        Defendant.                   )

<u>ORDER AND OPINION DENYING DEFENDANTS BRADLEY SMITH AND DUSTIN
MERRIETT'S MOTION FOR SUMMARY JUDGMENT</u>

Defendants Bradley Smith and Dustin Merriett move for summary judgment (Doc. # 67). The Motion is denied.

I. BACKGROUND

Kevin Ward ("Ward"), an inmate at South Central Correctional Center in Licking, Missouri, brought this action under 42 U.S.C. § 1983, alleging that his constitutional rights were violated when correctional officers Bradley Smith ("Smith") and Dustin Merriett ("Merriett") (collectively "Defendants") sprayed him with pepper spray.

The Court has reviewed the record. The following facts are either uncontroverted or controverted but construed in Ward's favor.

On October 26, 2009, Merriett came to Ward's cell to speak to him. The details of the conversation between Merriett and Ward are in dispute. Ward alleges Merriett told him to stop talking because he had a headache and he did not want to hear Ward talking. Ward Deposition ("Ward Dep.") (Doc. # 68-2), 8:8-12. Ward contends that because he would not stop talking, Merriett threatened "I'm going to strip your ass out and you're going to freeze." Ward Dep. 9:3-5. Merriett denies having told Ward to stop talking, and argues he told Ward he was going to perform a cell search. However, Merriett omits any reference to the record to support the fact. This leaves Ward's

statement that the conversation between Ward and Merriett was initiated because Ward was talking and Merriett told him to stop because he had a headache. It is undisputed that Merriett told Ward that he would be removed from the cell and Merriett ordered Ward to "cuff up" (submit to wrist restraints). Ward refused the order and asked to see a sergeant. Ward Dep 9:4-5.

Subsequently, Sergeant Smith approached and asked Ward to "cuff up," but Ward refused. Ward Dep. 12:19-23. After Ward's refusal, Smith contacted medical and received confirmation that Ward did not suffer from any medical condition that would cause a reaction to pepper spray. Defendants argue that Ward's refusal to comply with direct orders to "cuff up" posed a threat, or a dangerous situation, which required the use of pepper spray. However, Defendants failed to explain or point to anything in the record to explain the threat. Therefore, there is nothing in the record to establish that Ward posed a threat for refusing wrist restraints.

Smith returned to Ward's cell and sprayed Ward with pepper spray through the food port in the cell. Ward testified at his deposition that Smith did not tell him that he was going to spray him with pepper spray. Ward Dep. 13:1-2. Defendants do not point to any evidence to controvert the fact that Ward was not warned prior to the application of pepper spray—but even if they had, the Court must construe the facts in Ward's favor.

Smith repeated the order to "cuff up." Again, Ward refused. Smith then released a second burst of pepper spray through the food port. At one point, Ward grabbed the nozzle of the pepper spray container in an attempt to aim it toward the floor.[1] Ward Dep. 10:3-5. One of the Defendants used a battering ram to move Ward's hand, which cut Ward's arm. Ward Dep. 10:7-11.

After the second pepper spray burst, Ward submitted to wrist restraints. Defendants took Ward to a "strip out cage" where he was given a security smock and his clothing was removed. Defendant Nurse Tiffany Breeden examined Ward. While in the cage, Ward contends he was sprayed two additional times, and Smith only recalls one additional burst of pepper spray. Construing the facts in the light most favorable to

---

[1] It is disputed whether Ward grabbed the nozzle after the first or second burst of pepper spray.

2

Ward, Ward was sprayed a total of four times. Ward contends that while in the cage, he asked to see the lieutenant and Smith sprayed the pepper spray directly into his mouth, which caused him to vomit. Ward Dep. 10:21-23. Defendants do not rebut this evidence. Again, Smith ordered Ward to "cuff up" and Ward asked to see the lieutenant. Ward Dep 11: 13-15. Smith sprayed the pepper spray on Ward's genitals and said "there's your lieutenant nigger." Ward Dep 11:20-23. Again, Defendants do not rebut this evidence. It is undisputed that Ward refused orders to "cuff up" each time he was sprayed. Ward Dep. 14:6-19.

Ward eventually submitted to wrist restraints and the officers took Ward back into his cell. Ward did not have any clothes and the cell was covered in pepper spray including the bunks, walls, and floors. Ward Dep. 12:7-13. Ward contends he was not given the opportunity to shower and the water in his cell was shut off—the only water available was in the toilet. Ward Dep 16:5-9, 21-25. Ward was not offered a shower until October 30, 2009. Ward Dep. 18:23-15, 19:1; Affidavit of Michael A. Brown (Doc. # 1-1). Defendants do not rebut Ward's evidence he did not have access to water and that he was not offered a shower until October 30, 2009.

On September 27, 2010, Ward brought this action against Smith, Merriett, Nurse Tiffany Breeden, and Director of Nursing Edie McDaniels ("McDaniels"). On January 5, 2011, the Court dismissed McDaniels. Ward alleges that Defendants Merriett and Smith sprayed him with pepper spray multiple times, constituting excessive force. On October 28, 2011, Smith and Merriett filed a Motion for Summary Judgment.[2]

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and

---

[2] The claims against Defendant Tiffany Breeden will be addressed in a separate Order.

which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985).

## III. DISCUSSION

Defendants move for summary judgment contending they are entitled to qualified immunity. "Qualified immunity may protect government officials from liability for civil damages, but it is not available if an official's conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Treats v. Morgan*, 308 F.3d 868, 871 (8th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A two-step inquiry is used when analyzing qualified immunity: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether the right was clearly established at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "An officer is entitled 'to avoid the burden of trial' unless the answer to both questions is yes." *Treats*, 308 F.3d at 872 (quoting *Saucier*, 533 U.S. at 201).

The Eighth Amendment protects incarcerated prisoners from the unnecessary and wanton infliction of pain by correctional officers. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Jones v. Shields*, 207 F.3d 491, 494 (8th Cir. 2000). Officers may reasonably use force in a "good-faith effort to maintain or restore discipline" but may not apply force "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. In considering whether force was reasonable or used in good faith, the Court may consider: (1) whether there was an objective need for force; (2) the relationship between any such need and the amount of force used; (3) the threat reasonably perceived by the

4

correctional officers; (4) any efforts by the officers to temper the severity of their forceful response; and (5) the extent of the inmate's injury. *Hudson*, 503 U.S. at 7; *Treats*, 308 F.3d at 872.

Defendants cite to *Jones v. Shields*, 207 F.3d 481 (8th Cir. 2000), for the proposition that the application of pepper spray is a "good-faith effort to maintain order" when an inmate has refused a direct order. Defendants' Motion for Summary Judgment (Doc. # 67), at 9. In *Jones*, an inmate was outside of his cell and refused direct orders from a prison official. 207 F.3d at 493. The official repeated the order and the inmate became very loud and argumentative. *Id.* The inmate, who was much larger than the prison official, became threatening. *Id.* The official used a limited application of pepper spray in response to the inmate's outburst. The Eighth Circuit held that the prison official's "administration of [pepper spray] in this prison setting resulted in de minimis injury for Eighth Amendment purposes." *Jones* concluded that the limited application of pepper spray was a tempered response by a prison official to control a recalcitrant inmate. *Id.* at 496. However, the Eighth Circuit has made it clear that *Jones* "did not hold that all applications of pepper spray result in de minimis injury." *Lawrence v. Bowersox*, 297 F.3d 727, 731 (8th Cir. 2002). Instead, "[r]esolution of the constitutional issue turns on the circumstances of the individual case or the particular 'prison setting.'" *Treats*, 308 F.3d at 872 (quoting *Jones*, 207 F.3d at 495).

An Eighth Amendment claim exists when, "an officer uses pepper spray without warning on an inmate who may have questioned his actions but who otherwise poses no threat." *Treats*, 308 F.3d at 873 (citing *Foulk v. Charrier*, 262 F.3d 587, 691-92, 702 (8th Cir. 2001)). In *Treats v. Morgan*, after an inmate signed a form acknowledging that a radio had been confiscated from his cell, a correctional officer demanded that the inmate take a copy of the form. *Id.* at 870. The inmate said he did not want a copy. *Id.* Again, the officer told the inmate to take a copy. *Id.* The inmate turned to talk to a lieutenant about the situation and the correctional officer sprayed the inmate in the face with a prolonged burst of pepper spray. *Id.* The inmate testified that he did not threaten any correctional officer and that he was sprayed without warning. *Id.* at 872. The district court denied defendants' motion for summary judgment on qualified immunity and the Eighth Circuit affirmed, holding that fact questions precluded summary

5

judgment.  Viewing the facts most favorable to the plaintiff, the Eighth Circuit found that the evidence did not show an objective need to use the force because the inmate "had not jeopardized any person's safety or threatened prison security."  *Id.*

Construing the facts in Ward's favor, as it is required to do at this stage of the proceedings, the Court finds that the use of pepper spray was neither reasonable nor in good faith.  The facts, viewed in the light most favorable to Ward, show that the use of pepper spray could have been motivated by frustration and anger merely because Ward would not stop talking.  At this stage in the proceedings, there is no evidence in the record to establish that Ward posed a threat to the correctional officers or the prison security.  Like in *Treats*, Ward was not recalcitrant or threatening.  Although Ward refused orders to "cuff up," it is undisputed that Ward was *inside* his cell or in the "strip out cage" each time he was sprayed.  Further, like in *Treats*, Ward testified that he was not warned prior to the first use of pepper spray.  Moreover, the amount of force used by Defendants was not justified.  This case is unlike *Jones*, where the defendant used a limited application of pepper spray.  In this case, according to Ward, his entire cell was covered with pepper spray and Defendants sprayed Ward four times, including on his body, in his mouth, and on his genitals.  Ward was denied access to water and was not given the opportunity to shower until several days later.

The second prong in analyzing qualified immunity requires determining whether Ward's constitutional rights were clearly established.  "A right is clearly established if its contours are sufficiently clear that a reasonable official would have fair warning of what type of action would violate that right."  *Treats*, 308 F.3d at 874.  It is "clearly established that force may be justified to make an inmate comply with a lawful prison regulation or order, but only if the inmate's noncompliance also poses a threat to other persons or to prison security."  *Id.* at 875 (citing *Lawrence*, 297 F.3d at 731; *Jones*, 207 F.3d at 496-97; *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993); *Stenzel v. Ellis*, 916 F.2d 423, 426-27 (8th Cir. 1990)).  When Ward was sprayed with pepper spray, "the law was clearly established that correctional officers do not have a blank check to use force whenever a prisoner is being difficult."  *Id.* (citing *Hickey*, 12 F.3d at 759).  Ward has presented sufficient evidence at this threshold stage to show a violation of a clearly established constitutional right.  Accordingly, the Court finds that Defendants are not

entitled to qualified immunity.

## IV. CONCLUSION

The Court denies Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

DATE: March 31, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT