IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

KEVIN WARD,                              )
                                         )
       Plaintiff,                        )
                                         )
  v.                                    )    Civil No. 10-3398-CV-S-ODS
                                         )
BRADLEY SMITH, et al.,                   )
                                         )
       Defendants.                       )

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND JUDGMENT IN FAVOR OF DEFENDANTS**

      Plaintiff, an inmate at South Central Correctional Center in Licking, Missouri, filed an Amended Complaint against correctional officers Bradley Smith ("Smith") and Dustin Merriett ("Merriett") (collectively "Defendants"), asserting a claim under 42 U.S.C § 1983 and a claim for intentional infliction of emotional distress. Plaintiff's claims are based on Defendants' alleged excessive use of pepper spray against him. In light of the Court's Order on October 29, 2014, Defendants are being sued only in their individual capacities. Doc. #203.

      A bench trial was held the week of April 27, 2015. As discussed below, the Court finds in Defendants' favor.

## I.   FACTUAL FINDINGS

      The Court finds the following facts have been proven by the greater weight of the evidence. In setting forth its findings, the Court will not parse out each piece of evidence or testimony on a point and will only occasionally indicate the evidentiary support for the facts set forth. It should be understood that any conflict in the evidence has been resolved in the manner described below.

### A.  Background

      The Missouri Department of Corrections operates South Central Correctional Center ("SCCC") in Licking, Missouri. Defendants Dustin Merriett and Bradley Smith

both worked at SCCC as correctional officers during October and November 2009. Also during October and November 2009, Plaintiff was housed by himself in cell 154 in an administrative segregation ("ad seg") unit at SCCC. Plaintiff's cell was equipped with a functioning toilet and sink.

SCCC had an evening "count time" each day at 10 p.m. During count time, each inmate is required to state his name and number. Plaintiff previously had been housed in ad seg units in other MDOC facilities, and so was familiar with the rules associated with that type of housing unit.

### B. Cell Search Procedure

SCCC correctional staff members perform searches of inmates' cells once a month, at a minimum. The searches are unannounced and irregularly timed. It would be unusual for a cell search to be performed shortly before count time. The procedure for performing a cell search is as follows: the inmate is placed in restraints, removed from his cell, and escorted to the strip out cell, which is a small cage the size of a phone booth. Once in the strip out cell, the inmate is strip searched. While the strip search of the inmate is occurring, the inmate's cell is being searched. Once the strip search and the cell search are finished, the inmate is again placed in wrist restraints, and the inmate is escorted back to his cell. After a correctional officer completes this cell search, the correctional officer is supposed to record the search in an Institutional Search Report log.

### C. Use of Force Procedure

When a correctional officer orders an inmate to submit to wrist restraints for a cell search, the inmate must comply with this order. A failure to comply with such an order is a violation of the MDOC Offender Rulebook. Correctional officers are authorized to use force to gain and maintain control of an inmate, but must only use the minimum amount necessary to do so. If an inmate refuses to comply with a correctional officer's order, the inmate is considered to be "out of control." Attempts to gain compliance with a correctional officer's order are considered efforts to gain and maintain control of an inmate. A correctional officer must receive authorization from the shift supervisor on

2

duty before carrying out a planned use of force on an inmate. If time and circumstances permit before administering force, correctional staff must counsel the inmate, warn the inmate that force will be used, and give the inmate an opportunity to comply with orders.

During a use of force involving pepper spray, the target area is the inmate's face. Pepper spray should be applied to the target area for a ½ to 1 second burst. While the distance varies depending on the type of dispenser, a correctional staff member should be at least three feet away from the target area when applying pepper spray. After an inmate is sprayed with pepper spray in his cell, the inmate is expected to clean the pepper spray in his cell.

### D. Limited Property Status

An inmate can be placed on limited property status when an inmate uses property to barricade the cell door. When an inmate is placed on limited property status, correctional staff members remove all property and clothing from the inmate's cell. The only property the inmate would retain would be a security smock and a security blanket. Based on the inmate's behavior, correctional staff members would return one item of property per shift.

### E. October 26, 2009 Incident

During the evening October 26, 2009, Plaintiff was talking with another inmate housed in the ad seg unit. Sometime between 9:00 p.m. and 9:24 p.m., Defendant Merriett instructed Plaintiff to stop talking. Plaintiff refused. Soon thereafter, Defendant Merriett ordered Plaintiff to submit to wrist restraints. Plaintiff refused. Defendant Smith approached Plaintiff's cell and ordered Plaintiff to submit to wrist restraints so that correctional staff could perform a search of Plaintiff's cell. Plaintiff refused to submit to wrist restraints. Defendant Smith then contacted medical staff at SCCC to determine whether Plaintiff had a medical condition that would prevent the use of pepper spray and was informed Plaintiff did not have any such condition.

Defendant Smith received authorization from Lieutenant Jeremy Robertson, the shift supervisor during the evening of October 26, 2009, to carry out a planned use of force against Plaintiff. Defendant Smith, with Defendant Merriett and correctional officer

3

Michael Pinkava, returned to Plaintiff's cell with a pepper spray canister and ordered Plaintiff to submit to wrist restraints. Defendant Smith warned Plaintiff that pepper spray would be used against him if Plaintiff failed to comply with this order. Plaintiff refused. Standing less than three feet away from Plaintiff, Defendant Smith sprayed Plaintiff through his cell's food port with pepper spray for three to five seconds.

Shortly thereafter, Defendant Smith again ordered Plaintiff to submit to wrist restraints. Plaintiff refused to do so and placed his mattress up against his cell's food port. Defendant Merriett used a barricade removal assistance device ("BRAD") to move the mattress out of the food port. At approximately the same time, Defendant Smith sprayed Plaintiff with pepper spray for more than three to five seconds. Defendant Smith was standing less than three feet away from Plaintiff when he did so. Plaintiff grabbed on to the BRAD and on to the wand of the pepper spray canister, but eventually let go of each. During this tussle, the BRAD scratched Plaintiff's arm. Shortly thereafter, Plaintiff submitted to wrist restraints.

Defendants Smith and Merriett escorted Plaintiff to the strip out cell. While in this cell, Plaintiff removed his clothing, and a strip search was performed on Plaintiff. Defendant Smith handed Plaintiff a security smock, which is a thin padded blanket meant to cover the front and back of an inmate but is left open on the sides. The security smock has velcro straps that can be used to close the sides of the smock to some degree. Plaintiff tied the security smock around his waist. While Plaintiff was in the strip out cell, Defendant Merriett performed a cell search of cell 154.

After the strip search was completed, Nurse Tiffany Breeden tended to the laceration on Plaintiff's arm. She cleaned it with saline solution and placed a bandage on it. After Nurse Breeden finished her medical care, Defendant Smith approached Plaintiff in the strip out cell. As Defendant Smith ordered Plaintiff to submit to wrist restraints, Plaintiff placed his hands on his face. Almost immediately after issuing this order, Defendant Smith sprayed Plaintiff in the face with pepper spray. Defendant Smith sprayed Plaintiff with pepper spray for a few seconds and from a distance of less than three feet. Some of the pepper spray got into Plaintiff's mouth. Plaintiff began coughing, stated he had a history of asthma, and asked for medical attention. Nurse Breeden returned to the strip out cell and placed an oximeter (which measures a

4

patient's oxygen levels) on Plaintiff's hand.  Nurse Breeden determined from the oximeter readings that Plaintiff's oxygen levels were within normal range.

As Defendant Smith returned to the strip out cell, Plaintiff pulled the security smock over his head.  Defendant Smith ordered Plaintiff to submit to wrist restraints and almost immediately thereafter sprayed Plaintiff with pepper spray on his bare genitals.  Defendant Smith sprayed Plaintiff with pepper spray for a few seconds and from a distance of less than three feet.  Several minutes later, Pinkava radioed Defendant Merriett to inform him that Plaintiff was willing to submit to wrist restraints.  Defendants Smith and Merriett returned to the strip out cell, placed Plaintiff in wrist restraints, and escorted Plaintiff back to cell 154.

Because Plaintiff had placed his mattress up against his cell's food port, Plaintiff had been placed on limited property status.  Due to this status, Plaintiff did not have soap in his cell for the remainder of the evening.  In the days following the October 26, 2009, incident, water was not cut off to Plaintiff's cell. On October 27, 2009, Plaintiff refused a shower. By October 29, 2009, Plaintiff had received all of his property back.

## II.  DISCUSSION

This Part II may include additional findings of fact, either singly or conjunctively with application of a legal principle.  Like the factual findings set forth in Part I, all of these facts are found to exist by the greater weight of the evidence.

### A. Eighth Amendment – 42 U.S.C § 1983

Section 1983 provides that "any person who deprives an individual of his or her constitutional rights under color of state law shall be liable to that individual."  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989).  "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) (citations and quotations omitted).  When an inmate claims prison officials used excessive force in violation of the Eighth Amendment, "the core judicial inquiry is…whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id.* at 1139 (citations and quotations

5

omitted). In determining whether excessive force was used, the Court looks to factors such as "whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury." *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002).

*1. First Three Applications of Pepper Spray*

Plaintiff makes several arguments as to why the first three applications of pepper spray constitute a violation of the Eighth Amendment. The Court will consider each argument in turn.

Plaintiff maintains the series of events on the evening of October 26, 2009, were all started because Plaintiff refused to stop talking when Defendant Merriett ordered him to do so. Plaintiff further asserts that Defendants Merriett and Smith only ordered him to submit to wrist restraints for a cell search because he had refused to stop talking. The Court agrees that this disagreement did start the chain of events. However, the Court finds that when Defendants Merriett and Smith ordered Plaintiff to submit to wrist restraints so they could perform a cell search, the nature of the situation changed. The Court acknowledges that there is no record of a cell search in the Institutional Search Log for Plaintiff's cell. Nonetheless, the Court finds Defendants Merriett and Smith ordered Plaintiff to submit to wrist restraints for a cell search. These were lawful orders, and once Defendants Merriett and Smith issued these orders, Plaintiff was obligated to follow them. As an inmate, Plaintiff lacked the authority or right to resist the search or contest its irregularity by deciding not to comply.

Plaintiff compares this case to *Treats v. Morgan* in support of his position, but that case is easily distinguishable from this case on several grounds. 308 F.3d 868 (8th Cir. 2002). First, that case was decided at the summary judgment stage, when the *Treats* Court was required to view the facts in the light most favorable to the inmate plaintiff. Here, the Court owes Plaintiff no such deference. Next, the facts in the *Treats* case are substantially different from the facts in this case. In *Treats*, the defendant correctional officer removed a radio from the plaintiff inmate's cell and then had the

6

plaintiff fill out a form acknowledging that fact. *Id.* at 870. After the plaintiff completed the form, the defendant ordered the plaintiff to take a copy of the form. *Id.* The plaintiff was not required by prison regulations to take a copy of the form, and thus, he refused the defendant's order and began to walk away. *Id.* The defendant repeated the order, and as the plaintiff turned around, the defendant sprayed the plaintiff in the face. *Id.* Here, Defendants Smith and Merriett gave Plaintiff an order to submit to wrist restraints for a cell search. Plaintiff was required to follow this order. Additionally, as discussed in more detail below, the Court finds Defendants Merriett and Smith did sufficiently warn Plaintiff that they would use pepper spray against him if he did not submit to wrist restraints for a cell search. Thereafter, Plaintiff was on notice that if he did not comply with Defendants' orders, he would be subject to a use of force. Finally, the *Treats* Court determined that the record did not indicate the inmate plaintiff would have remained noncompliant if the defendants had better counseled and better warned him. The same cannot be said here. Plaintiff placed a mattress against his food port, placed his hands on his face, and placed the security smock over his head and top half of his body. Plaintiff testified the reason he placed the security smock over his head was because, "I was afraid he [Defendant Smith] was going to spray me again because I knew I wasn't going to comply with his directive." Plaintiff's own testimony and actions clearly demonstrate he had no intention of complying with Defendants' orders, regardless of whether Defendants better counseled or better warned him. Thus, the fact that a disagreement between Plaintiff and Defendant Merriett set off the events of October 26, 2009, does not create a violation of the Eighth Amendment.

Next, Plaintiff argues Defendants had no need to apply pepper spray because Plaintiff did not pose any security or safety issues. In support of this argument, Plaintiff cites *Hickey v. Reeder*. 12 F.3d 754 (8th Cir. 1993). However, that case is distinguishable from this case on several grounds. First, in *Hickey*, the defendants used a much more severe form of force: a stun gun, which "inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless." *Id.* at 757. Additionally, the defendants in *Hickey* alleged they used the stun gun to temporarily disable the plaintiff because they feared for their safety, but other facts undercut this claim. After they used the stun gun, the defendants did nothing to

7

"take advantage of [the plaintiff's] incapacitation to neutralize any perceived threat to their safety." *Id.* Here, there is no incongruity between Defendants' stated purpose for using pepper spray and their actions. Defendants' maintained they needed to use pepper spray to gain compliance with their order to submit to wrist restraints for a cell search. When Plaintiff complied with these orders, Defendants ceased using pepper spray. Finally, in *Hickey*, the defendants ordered the inmate plaintiff to sweep his cell, and as the *Hickey* Court determined this was merely a "housekeeping order." *Id.* at 759. Here, Defendants Merriett and Smith ordered Plaintiff to submit to wrist restraints for a cell search. This type of order was not merely a housekeeping order, but rather an order that was important to the safety of the correctional officers and the SCCC institution.

Accordingly, Plaintiff did, in fact, pose security concerns to the SCCC facility when he refused to follow orders to submit to wrist restraints for a cell search. To safely perform a cell search of Plaintiff's cell, Defendants Merriett and Smith had to remove Plaintiff from his cell. To safely remove Plaintiff from his cell, Defendants Merriett and Smith had to place Plaintiff in wrist restraints. When Plaintiff declined to submit to wrist restraints, Defendants were faced with an inmate who was openly disobeying orders. A refusal to submit to wrist restraints for a cell search, quite clearly, presents concerns for the order and security of an institution such as SCCC. Once Defendants had moved Plaintiff to the strip out cell, completed the strip search, and completed the cell search; Defendants then had to escort Plaintiff back to his original cell. To remove Plaintiff from the strip out cell, Plaintiff was required to submit to wrist restraints. When Plaintiff did not submit to wrist restraints for the third time, Defendants were, again, faced with an inmate who was openly disobeying orders. Moreover, Defendants "could not simply leave [Plaintiff] in the [strip out cell], where he did not belong." *Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014). Thus, Plaintiff's argument "ignores the reality of what was required to maintain or restore discipline in this situation." *Id.* (internal quotations and citations omitted).

Plaintiff also claims Defendants Merriett and Smith did not temper their response, because they did not advise, counsel, or warn him pepper spray would be used. The Court finds that before the first application of pepper spray, Defendants ordered Plaintiff

8

Case 6:10-cv-03398-ODS   Document 289   Filed 06/16/15   Page 8 of 17

to submit to wrist restraints, gave Plaintiff an opportunity to comply with that order, and warned Plaintiff that a failure to comply would result in the use of pepper spray. After this first set of events, Plaintiff's own actions demonstrate that not only was he not going to comply with Defendants' orders, but that he understood that pepper spray would be used against him if he did not comply with Defendants' orders. After the second order, Plaintiff placed a mattress against his food port. After the third order, Plaintiff placed his hands over his face. After the fourth order, Plaintiff placed a security smock over his head and the top half of his body. Accordingly, Plaintiff was sufficiently advised, counseled, and warned.

Plaintiff maintains Defendants' use of force was disproportionate given the situation started because he refused to stop talking. Plaintiff also maintains that the alleged disproportionate nature of their response indicates they were punishing Plaintiff. The Court is not persuaded by either of these arguments. First, despite Plaintiff's contention otherwise, the video evidence does not demonstrate that Defendant Smith's first two sprays of pepper spray drenched Plaintiff's cell. If Plaintiff's cell had been saturated in pepper spray, Plaintiff likely would have exhibited greater coughing or difficulty breathing as he was escorted from his cell to the strip out cell – but Plaintiff exhibited no such effects. Further, if Plaintiff's cell had been drenched in pepper spray, Plaintiff likely would not have refused a shower. Thus, the Court does not find that the amount of force used was as great as Plaintiff claims. Second, the Court does not agree that Defendants were responding merely to Plaintiff's refusal to stop talking. Rather, Defendants used pepper spray in response to Plaintiff's refusal to submit to wrist restraints for a cell search. As the Court has already discussed, Plaintiff's failure to submit to wrist restraints presents clear security concerns. Each application of pepper spray lasted for only a few seconds. Thus, Defendant Smith's use of pepper spray was not disproportionate to the security concerns Plaintiff created. Finally, the Court does not find Defendants' actions were intended to punish Plaintiff. Rather, Defendants were attempting to gain and maintain control of a disobedient inmate. Defendants always ceased using force once Plaintiff complied with their orders. Thus, Defendants' actions were not disproportionate, nor were they punishment.

9

Plaintiff also maintains, "no lasting injury is necessary to make out an Eighth Amendment violation, for the infliction of pain is sufficient if it was inflicted for the purpose of causing harm." *Treats*, 308 F.3d at 874. The Court agrees with this statement of the law, but finds that it does not aid Plaintiff. Here, Defendants did not use force for the purpose of causing harm. Instead, Defendants used force to gain compliance with their orders.

*2. Fourth Application of Pepper Spray*

Plaintiff maintains the fourth application of pepper spray on his bare genitals violates the Eighth Amendment. Plaintiff argues there was no need for the fourth use of force. The Court disagrees. Plaintiff is overlooking the fact that Defendants could not just leave him in the strip out cell. Once the strip search and cell search were completed, Defendants had to move Plaintiff from the strip out cell back to cell 154. Plaintiff was required to submit to wrist restraints for Defendants to carry out this task. When Plaintiff failed to comply with this order, Defendants were, for a fourth time, faced with a disorderly inmate.

Plaintiff continues to argue that he presented no security concerns. But as discussed previously, an inmate who openly disobeys orders to submit to wrist restraints for a cell search presents obvious security concerns. These concerns are even more serious given Plaintiff was located in the strip out cell by this point, a location where he could not remain.

Plaintiff asserts Defendants failed to temper their response in a variety of ways. First, Plaintiff notes Defendant Smith sprayed Plaintiff for too long and Defendant Smith was too close to Plaintiff when he sprayed him. The Court acknowledges that the length of Defendant Smith's spray and the distance from which he sprayed Plaintiff violated MDOC and SCCC policies. However, these policies do not set forth constitutional standards. Rather, these policies call for more than what the Constitution requires. While Defendant Smith may have violated MDOC and SCCC policy due to how long he sprayed and the distance from which he sprayed, he did not violate the Constitution. Plaintiff also notes that when someone is sprayed with pepper spray at close range, that person can experience the Hydraulic Needle Effect. Plaintiff may be

10

Case 6:10-cv-03398-ODS   Document 289   Filed 06/16/15   Page 10 of 17

correct, but Plaintiff has not testified nor is there any evidence suggesting that *he* experienced the Hydraulic Needle Effect.

Second, Plaintiff appears to assert generally that Defendants had a variety of other options to gain Plaintiff's compliance. But the only other option Plaintiff provides is that Defendant Smith could have sprayed another location of Plaintiff's body. Perhaps that would have been a better option, but Defendant Smith did not have to choose the better option to comply with the Constitution. Moreover, the evidence does not establish that Defendant Smith intentionally applied pepper spray to Plaintiff's naked genitals. At this point, Plaintiff had placed the security smock over the top half of his body, and thus, Defendant Smith had limited target areas from which to choose.

Finally, Plaintiff argues Defendant Smith did not warn him and did not give him an opportunity to comply. The Court is unpersuaded by this argument. Plaintiff had placed the security smock over his head and the top half of his body. Thus, Plaintiff quite clearly understood the situation – that is, if he did not comply with orders, Defendant Smith would spray Plaintiff with pepper spray. Moreover, Plaintiff had sufficient time to drop the security smock and comply with Defendants' orders. Plaintiff seems to ignore the fact that, at every turn, he did not just passively decline to comply with orders. Instead, at every turn, he engaged in actions that proactively indicated the opposite – he placed a mattress up against his food port, he placed his hands on his face, and he placed the security smock over his head and the top half of his body. By this point, Plaintiff was sufficiently warned and had sufficient opportunity to comply.

### 3. Defendant Merriett's Involvement

Plaintiff argues Defendant Merriett violated the Eighth Amendment during Defendant Smith's final application of force. Plaintiff notes a correctional officer can violate the Eighth Amendment by failing to protect an inmate when (1) "the inmate…is incarcerated under conditions posing an objectively substantial risk or serious harm," and (2) when "the prison official was deliberately indifferent to the inmate's health and safety." *Lawrence v. Bowersox*, 297 F.3d 727, 731 (8th Cir. 2002), *see also Estate of Davis by Ostenfeld v. Delo*, 115 F.3d 1388, 1395 (8th Cir. 1997).

Both cases are distinguishable for the same three reasons. In both cases Plaintiff cites, the courts found an underlying Eighth Amendment violation had occurred. Here, however, the Court does not find that to be the case. Second, the inmates also were compliant with the correctional officers' orders. As has been discussed previously, the same cannot be said of Plaintiff in this case. Finally, in both cases, the correctional officers' behavior was substantially different than the behavior at issue here. In *Davis*, the inmate was lying still on the floor while a correctional officer "repeatedly struck Davis about the head and face, and smashed Davis' chin against the cell's concrete floor." *Davis*, 115 F.3d at 1392. In *Lawrence*, the inmates' entire cell was soaked with pepper spray, the inmates were forced to inhale the pepper spray for ten minutes, and one inmate suffered injuries for several days. *Lawrence*, 297 F. 3d at 730. Here, however, Defendant Smith applied a short burst of pepper spray to the lower half of Plaintiff's body. The evidence does not demonstrate Defendant Smith intentionally sprayed Plaintiff's genitals. Instead, the evidence suggests Defendant Smith was attempting to spray higher up on Plaintiff's body but had limited ability to do so, given that Plaintiff had placed a security smock over the top half of his body. Plaintiff also was not forced to inhale pepper spray for ten minutes, nor did he suffer injuries for several days thereafter.

*4. Totality of the Circumstances*

Plaintiff also argues Defendants Merriett and Smith violated the Eighth Amendment based on the totality of the circumstances and that courts have found an Eighth Amendment violation due to the use of pepper spray in three general categories. This argument is problematic because the "totality of the circumstances" cases Plaintiff cites relate to the Fourth Amendment, which is not at issue in this case. *Tennessee v. Garner*, 471 U.S. 1 (1985); *Smith v. Ray*, 781 F.3d 95 (4th Cir. 2015). Rather, Plaintiff has asserted Defendants violated the Eighth Amendment.

Plaintiff then cites cases that do relate to Eighth Amendment violations – but none of them appear to apply a "totality of the circumstances" standard. Rather, they all apply the legal standards that have previously been discussed. Regardless, none of these cases help Plaintiff's position. First, Defendants did not use an unreasonable

12

amount of a chemical agent. Unlike the examples Plaintiff cites, Defendants Merriett and Smith did not discharge the pepper spray canisters until they were empty, they did not douse Plaintiff's cell with pepper spray, and they did not indiscriminately spray an entire prison tier. *Furnace v. Sullivan*, 705 F.3d 1021 (9th Cir. 2013); *Lawrence v. Bowersox*, 297 F.3d 727 (8th Cir. 2002); *DeSpain v. Uphoff*, 264 F.3d 965 (10th Cir. 2001).

Second, Plaintiff argues courts have found correctional officers violated the Eighth Amendment when they used a chemical agent before giving a verbal command or after an inmate had been subdued. Here, however, Defendants did give Plaintiff a verbal warning before the first use of pepper spray. As previously discussed, after the first use of pepper spray, Plaintiff was well-aware that if he did not comply with the order to submit to wrist restraints for a cell search, Defendants would use pepper spray against him. Plaintiff also seems to argue that he was subdued in his cell and the strip out cell, and thus, there was no need for a use of force. Plaintiff again overlooks the fact that Defendants had ordered a cell search, and they had to safely remove Plaintiff from his cell. To do so, Plaintiff had to submit to wrist restraints. Similarly, after Plaintiff had been moved to the strip out cell and after the cell search and strip search were completed, Defendants then had to move Plaintiff back to his cell. For Defendants to safely complete this task, Plaintiff was required to submit to wrist restraints.

Plaintiff also appears to lump Defendant Merriett's use of the BRAD under this category. The Court finds this is an inappropriate categorization for a variety of reasons. First, the BRAD is not a chemical agent. Second, Plaintiff was not subdued when Defendant Merriett used the BRAD. Rather, Defendant used the BRAD when Plaintiff placed a mattress up against his food port. This action presents clear security concerns and in no way demonstrates a subdued inmate.

Third, Plaintiff argues Defendants violated the Eighth Amendment because they withheld appropriate medical attention after he had been pepper sprayed. The Court is unpersuaded by this argument. Nurse Breeden, who is no longer a party to this case, attended to Plaintiff's medical needs on more than one occasion. After Plaintiff had been moved to the strip out cell, Nurse Breeden cleaned and bandaged the superficial laceration Plaintiff incurred due to Defendant Merriett's BRAD use. Then, after the third

13

use of pepper spray, Nurse Breeden placed an oximeter on Plaintiff's hand and determined from the oximeter readings that Plaintiff's oxygen levels were within normal range.

Finally, Plaintiff asserts Defendants Merriett and Smith violated his Eighth Amendment rights because they (1) refused to allow him to shower, (2) cut off the water to his cell for several days, (3) forced him back into his cell without cleaning his pepper spray drenched cell, and (4) provided him with limited cleaning products. The facts are to the contrary. Defendants Merriett and Smith did not prohibit Plaintiff from taking a shower. Rather, Plaintiff himself refused to take a shower. Additionally, water was not cut off to Plaintiff's cell in the days following the October 26, 2009, incident. Instead, Plaintiff had a functioning sink and toilet in cell 154. Next, Plaintiff's cell was not drenched with pepper spray, and thus Plaintiff's cell did not require cleaning and the limited cleaning products in his cell were irrelevant.

For all the foregoing reasons, neither Defendant Smith nor Defendant Merriett are liable under section 1983 for a violation of the Eighth Amendment.

### B. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress claim, Plaintiff must prove "extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997). When defendant's "conduct amounts to the commission of one of the traditional torts, such as battery, and the conduct was not intended only to cause extreme emotional distress to the victim, the tort of intentional infliction of emotional distress will not lie." *K.G. v. R.T.R.*, 918 S.W. 2d 795, 799 (Mo. 1996). Thus, Plaintiff "must establish that defendant's sole intent in acting was to cause emotional distress." *Central Missouri Elec. Coop. v. Balke*, 119 S.W. 3d 627, 636 (Mo. Ct. App. 2003).

#### 1. Use of the BRAD

Defendant Merriett used the BRAD to move Plaintiff's mattress out of the food port. Plaintiff's actions presented obvious security concerns. Correctional staff must be

14

able to see into an inmate's cell, and correctional staff must be able to have control over their pepper spray canisters. Thus, Defendant Merriett's used the BRAD to ameliorate both of these security concerns. Accordingly, it was not Defendant Merriett's sole intent to cause Plaintiff emotional distress.

### 2. Use of Pepper Spray

Plaintiff argues the series of events on the evening of October 26, 2009, began because Plaintiff refused to stop talking when Defendant Merriett ordered him to do so. The Court agrees this exchange started the series of events. However, the situation changed when Defendants Merriett and Smith ordered Plaintiff to submit to wrist restraints so correctional staff members could perform a search of cell 154. While the cell search was unusually timed in that it would be performed within thirty minutes of count time, Defendants were completely within their authority to order this cell search. For correctional staff to perform the cell search, Plaintiff would have to be removed from his cell. To be removed from cell 154, Plaintiff would have to submit to wrist restraints. When Plaintiff refused to submit to wrist restraints, Defendants were faced with an inmate who was "out of control." Defendants, quite clearly, must maintain control of their facility. Thus, when Defendant Smith sprayed Plaintiff two times in cell 154, his sole intent was not to inflict emotional distress. Rather, Defendant Smith had an intent to gain and maintain control of a disobedient inmate.

After Plaintiff submitted to wrist restraints, Defendants escorted Plaintiff to the strip out cell and a strip search was performed on Plaintiff. While Plaintiff was in the strip out cell, Defendant Merriett performed a cell search of cell 154. Once Defendant Merriett completed the cell search, Defendants were then tasked with escorting Plaintiff back to cell 154. To do so, Plaintiff had to submit to wrist restraints. Thus, when Defendant Smith ordered Plaintiff to submit to wrist restraints, Plaintiff was required to follow this order. Instead of complying with this order, Plaintiff placed his hands on his face. Although Defendant Smith gave Plaintiff little, if any, time to comply with this Order, Plaintiff placing his hands on his face indicated to Defendant Smith that Plaintiff was not going to comply with the order. Defendant Smith was again faced with an inmate who was "out of control," and thus, Defendant Smith had to gain and maintain

15

control of Plaintiff. Accordingly, Defendant Smith's third spray of pepper spray was not solely intended to inflict emotional distress on Plaintiff.

After the third spray, Plaintiff stated he had had an asthmatic episode a few years prior. However, the electronic medical records that SCCC staff members accessed and relied upon did not indicate Plaintiff had any history of asthma. Moreover, after the third spray, Nurse Breeden assessed Plaintiff and placed an oximeter on Plaintiff's hand. Nurse Breeden determined from the oximeter readings that Plaintiff's oxygen levels were within normal range.

After Nurse Breeden completed her assessment, Defendant Smith returned to the strip out cell. As Defendant Smith approached Plaintiff, Plaintiff placed the security smock over his head. Defendant Smith ordered Plaintiff to submit to wrist restraints and then sprayed Plaintiff on his bare genitals. While Plaintiff argues otherwise, the video footage of the incident does not demonstrate Defendant Smith intentionally sprayed Plaintiff's bare genitals. Plaintiff's Exhibits #102, #135. Plaintiff had covered his face; and thus, the available target areas were limited. Defendant Smith testified that he tried to apply pepper spray to Plaintiff's face, and the Court finds this testimony credible.

Additionally, Plaintiff had sufficient time to drop the smock and comply with the order before he was sprayed. Plaintiff knew the spray was coming if he did not comply with Defendant Smith's order. Thus, for a fourth time Defendant Smith was presented with an inmate who was "out of control," and Defendant Smith had to gain and maintain control of that inmate. Therefore, Defendant Smith's fourth spray of pepper spray was not solely intended to inflict emotional distress on Plaintiff.

### 3. The Days Following the October 26, 2009 Incident

Finally, Plaintiff asserts that when he returned to cell 154, it was drenched in pepper spray and that water had been cut off to his cell. Plaintiff claims the only water he had access to was the water in his toilet. Plaintiff alleges he was unable to clean himself or his cell, and thus, he continued to suffer the effects of the pepper spray for several days.

The Court finds Plaintiff's cell was not drenched in pepper spray, and water was not cut off to his cell. Thus, the Court finds Plaintiff did not suffer the effects of the

16

pepper spray for several days after the October 26, 2009, incident. This conclusion is bolstered by Plaintiff's Exhibit #88, which indicates that in the days immediately following the October 26, 2009, incident, Plaintiff refused to take a shower. If Plaintiff were suffering from the effects of pepper spray, surely Plaintiff would have taken advantage of the shower offered to him.

### III. CONCLUSION

The Court finds in Defendants' favor. Judgment shall be issued accordingly.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: June 16, 2015     UNITED STATES DISTRICT COURT